```
1                    BEFORE THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA
2


3       UNITED STATES OF AMERICA,        .
                                         .  Case Number 18-CR-115
4                Plaintiff,              .
                                         .
5          vs.                           .
                                         .  Washington, D.C.
6       DOMENIC LAURENCE MICHELI,        .  May 1, 2018
                                         .
7                Defendant.              .
        - - - - - - - - - - - - - - - - -


8


9             TRANSCRIPT OF INITIAL APPEARANCE AND ARRAIGNMENT
                   BEFORE THE HONORABLE G. MICHAEL HARVEY
10                     UNITED STATES MAGISTRATE JUDGE


11

12      APPEARANCES:

        For the Government:              MAIA MILLER, AUSA
13                                       United States Attorney's Office
                                         555 Fourth Street Northwest
14                                       Washington, D.C. 20530
                                         202-252-6737
15
        For the Defendant:               TONY MILES, AFPD
16                                       Federal Public Defender's Office
                                         625 Indiana Avenue Northwest
17                                       Suite 550
                                         Washington, D.C. 20004
18                                       202-208-7500


19


20


21      Transcribing Court Reporter:     SARA A. WICK, RPR, CRR
                                         U.S. Courthouse, Room 4704-B
22                                       333 Constitution Avenue Northwest
                                         Washington, D.C. 20001
23                                       202-354-3284


24

        Proceedings recorded by audio recording.
25      Transcript produced by audio transcription.
```

```
1                    P R O C E E D I N G S

2         (Call to order of the court.)

3              COURTROOM DEPUTY:  This is criminal case year

4    2018-115, United States versus Domenic Micheli.  This is an

5    initial appearance and arraignment.

6         Would the parties, please, introduce yourselves to the

7    Court, beginning with the government.

8              MS. MILLER:  Good afternoon, your Honor.  Maia Miller

9    on behalf of the United States.

10             THE COURT:  Good afternoon.

11             MR. MILES:  Good afternoon, your Honor.  Tony Miles

12   for Mr. Micheli.

13        (Defendant sworn.)

14             THE COURT:  Sir, can you, please, state your name for

15   the record.

16             THE DEFENDANT:  Domenic Micheli.

17             THE COURT:  Mr. Micheli, how old are you?

18             THE DEFENDANT:  36 years old.

19             THE COURT:  How far did you get in school?

20             THE DEFENDANT:  Bachelor's.

21             THE COURT:  Bachelor's?

22             THE DEFENDANT:  Yeah.

23             THE COURT:  Okay.  You are here for an initial

24   appearance.  I'm going to let you know what charge you presently

25   face, the consequences if you are found guilty of that charge,
```

1    and I will tell you what your rights are, assign counsel if

2    that's what you wish the Court to do, and then we will have a

3    discussion about whether or not you're going to be released here

4    today and, if so, on what conditions.

5        Sir, you are here because the government has filed with --

6    charged you by information with one count of entering or

7    remaining in a restricted building or grounds in violation of

8    18 U.S.C. § 1752(a)(1).  Sir, if you are found guilty of that

9    charge, you could face a term of imprisonment of up to one year

10   in jail, a fine of up to $100,000, or both.

11       Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Sir, you have certain rights at this

14   point.  You have the right to remain silent.  Anything you say

15   can be used against you.

16       Do you understand that right?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  You also have the right to counsel.  If

19   you can't afford a counsel, the Court will appoint counsel here

20   today to represent you in this matter free of charge if you are

21   eligible.

22       Do you understand that right?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Sir, have you made a decision?  Would you

25   like the Court to appoint counsel to represent you here today,

1    or would you like to go hire your own counsel?

2              THE DEFENDANT:  I would like counsel.

3              THE COURT:  So you want me to appoint counsel?

4              THE DEFENDANT:  Yes.

5              THE COURT:  All right.  So I am going to ask you a few

6    questions, and the purpose of these questions is to determine

7    whether or not you have sufficient funds to go hire your own

8    attorney.  Okay?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Remember, you are under oath.  All right?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Sir, do you have any lawful sources of

13   income?  Do you have a job?

14             THE DEFENDANT:  No.

15             THE COURT:  Okay.  Do you have any money in the bank?

16             THE DEFENDANT:  Yes.

17             THE COURT:  How much?

18             THE DEFENDANT:  Between $13,000 and $15,500 or

19   thereabouts.

20             THE COURT:  Thereabouts.  And that's all the money you

21   have in the bank?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you have any stocks, bonds, anything

24   like that?

25             THE DEFENDANT:  No.

1        THE COURT:  Do you own a home?

2        THE DEFENDANT:  No.

3        THE COURT:  Okay.  Do you have any dependents, any

4    children?

5        THE DEFENDANT:  (Inaudible).

6        THE COURT:  Anyone else that you are taking care of?

7        THE DEFENDANT:  No.

8        THE COURT:  Do you own a car?

9        THE DEFENDANT:  Yes.

10       THE COURT:  Do you own that car outright?

11       THE DEFENDANT:  Yes.

12       THE COURT:  What kind of car is that?

13       THE DEFENDANT:  A 2007 (inaudible).

14       THE COURT:  Okay.  Any other major assets that you

15   have?

16       THE DEFENDANT:  No.

17       THE COURT:  Okay.  Sir, I do find that you are

18   eligible for appointment of counsel, and I will appoint the

19   Federal Public Defender to represent you in this case.

20     Mr. Miles, who is standing behind you, is an assistant

21   public defender.  Do you consent to him representing you in this

22   case?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Okay.  Then I will assign Mr. Miles -- I

25   will appoint Mr. Miles, I should say, to represent you in this

1    case.

2         For the parties' information, Judge Friedman has offered up

3    two dates in the case for a status conference:  May 18 at

4    11:30 a.m. or May 30 at 2:00 p.m.  What will work?  Today is the

5    1st of May.  So he is offering up May 18 or May 30.

6              THE DEFENDANT:  18th.

7              THE COURT:  Okay.  Make sure Mr. Miles can do it.

8              THE DEFENDANT:  I'm sorry, sir.

9              MR. MILES:  I would suggest the 18th as well.

10             MS. MILLER:  That's fine for the government.

11             THE COURT:  So we will go ahead and schedule the next

12    date in this case for May 30th -- May 18th, sorry, at 11:30 a.m.

13    That will be before District Judge Friedman, and he will be the

14    judge, sir, who will handle this case going forward, and if you

15    elect to go to trial, he will be the judge who will do the trial

16    in this case.  All right?

17        You also have -- well, maybe you don't.  This is just a

18    misdemeanor; right?

19             MR. MILES:  Yes, your Honor.

20             THE COURT:  Does he have the right to be indicted in

21    this case or not?

22             MR. MILES:  No, your Honor.

23             THE COURT:  I don't believe so either.  So I think I'm

24    done with your rights.  You can have a seat.  Okay?

25        Does the government have any requests with regard to the

1    defendant and his release here today?

2            MS. MILLER:  Yes, your Honor.  Thank you.  The

3    government would ask that the defendant be detained as a serious

4    risk of flight per 18 U.S.C. 3142(f)(2).  In support of our

5    request, we rely on a number of factors, mostly relating to what

6    the defendant indicated or stated to --

7            THE COURT:  I know nothing about this case.  I don't

8    know what happened.  If there's an affidavit, I haven't read it.

9            MS. MILLER:  Yes, there is not an affidavit.  So what

10   occurred is the defendant was arrested late Friday night on

11   White House property grounds.  He was then presented to C-10 on

12   Saturday, where the government submitted the information, which

13   I believe you have a copy.

14           THE COURT:  I have the information, yes.

15           MS. MILLER:  Right.  So he was presented and had his

16   initial presentment, then, on Saturday.  The government asked

17   that he be detained as a serious risk of flight, and in support

18   of the information, as per Superior Court practice, the

19   government filed the *Gerstein*, which is a sworn statement

20   setting forth the probable cause.  I'm not sure if your Honor

21   has -- if the Court has a copy of the *Gerstein* --

22           THE COURT:  If there's a *Gerstein* -- is it in here?

23   Maybe it's in here.  I do not have it.  Do you have it?

24           MS. MILLER:  I do, if I could provide a copy to your

25   Honor.

1          THE COURT:  Sure.  That would be great.  Has Mr. Miles

2     seen a copy?

3          THE COURT:  Mr. Miles has a copy.

4          MR. MILES:  She gave me a copy.

5          THE COURT:  All right.  Good enough.

6          MS. MILLER:  I'm going to give Mr. Miles a second copy

7     just so his client has one.

8          THE COURT:  Okay.  Can you give me a moment so I can

9     just read it?

10         MS. MILLER:  Yes, your Honor.

11       (Pause.)

12         THE COURT:  Okay.  I've read the *Gerstein*.

13         MS. MILLER:  Yes, your Honor.  And so back to our

14    request that the defendant be detained, we believe that he

15    represents a serious risk of flight, and that is based on a

16    number of things that the defendant said to Secret Service when

17    he was arrested on Friday night.

18      The first is that the defendant indicated he was spending

19    time in, quote, several states, that he last came from

20    California, which is consistent with the car which the defendant

21    was driving had a California license plate and was actually

22    found to be registered to the defendant in California.

23      I spoke to the Secret Service officers who arrested the

24    defendant.  They indicated that it appeared, although they

25    certainly couldn't confirm, that the defendant was living in his

car or there was a lot of personal property in the defendant's car that is consistent with a person living in their car.

Let's see.  The defendant also stated that he had recently visited a number of states, many of which were out west.  He indicated that he had also spent time in Boston.  The defendant's driver's license, though, is a Tennessee driver's license and includes a Nashville address.  According to the Pretrial Services report, no residence has been verified.

And then finally, according to -- as is included in the *Gerstein*, the defendant was unwilling to provide phone numbers or addresses for family members to the Secret Service officers on the scene.

So the government believes that he represents a serious risk of flight separate and apart from the circumstances which give the basis -- or lay the foundation for the actual charge.  And by that, I mean, when the defendant was approached by Secret Service officers on Friday on the White House property grounds, the defendant said to them that he was the president and that he wasn't going anywhere.  The defendant also said, "Did they not tell you that I was coming?" and that he came to the White House to, quote, lead the nation.

He also stated that he believed the government put needles in the door to -- the door of his car to scare him, and he had admitted to being depressed and seeking mental health treatment at a facility in Nashville, as well as using marijuana often and

1  last smoking two days ago.

2      So the government believes that he does represent a serious

3  risk of flight.  We are asking that he be detained per

4  3142(f)(2).

5      In addition to that, we are also asking for a mental

6  observation screening.  I'm not sure if your Honor is aware of a

7  new practice which my office is able to pursue, which is -- per

8  18 U.S.C. 4241, the government is going to ask that the

9  defendant be examined by the psychological or psychiatric staff

10  of the D.C. Department of Behavioral Health, Pretrial and

11  Assessment branch.

12      Again, I'm not sure if your Honor is aware of this, but now

13  there has been a streamlined process employed in the U.S.

14  Attorney's Office that is ready to accept orders from judges

15  like yourself where mental health observations and mental health

16  screenings are able to be done on a much more expedited basis

17  than what has been done in the past.  The budget office is

18  prepared to receive these orders, to have funds go to pay for

19  such assessments, and apparently, the D.C. Department of

20  Behavioral Health, Pretrial and Assessment branch, is prepared

21  to do these things quickly.

22      So it's two requests, detained as a serious risk of flight,

23  and then also, we believe there's a basis, which is why I went

24  into the latter --

25          THE COURT:  The detention request is -- I assume that

1    it's a request for hearing, a detention hearing to be set in a

2    few days' time.

3              MS. MILLER:  Yes.

4              THE COURT:  And you do have to provide a factual basis

5    for that.  You've done so.  I'm happy to hear from Mr. Miles.  I

6    assume he wants a little time to figure out what's going on, in

7    any event.  Let me hear from Mr. Miles, and I might have a few

8    questions.

9         What order should we take these in?

10             MR. MILES:  Your Honor, we object to both requests.

11             THE COURT:  Understood.

12             MR. MILES:  With regard to detention, we find it,

13   frankly, outrageous that the government believes that this

14   gentleman, who has been charged with a misdemeanor offense and

15   has already spent four nights in jail, should remain

16   incarcerated.

17        They have -- they seem to be relying on the notion that

18   he's a serious flight risk, and it has to be a serious flight

19   risk, not just simply a flight risk.  And they -- flight risk

20   relates to whether a person --

21             THE COURT:  Let me ask you this.

22             MR. MILES:  Sure.

23             THE COURT:  Do you want to have the hearing right now,

24   or do you want to wait one more day so you can figure out what's

25   going on and answer some of these questions about where he's

1   from, contacts he has, a plan for who he is going to stay with,

2   how he's going to come back?  I would think you would want that.

3   I know he's already been in jail for a few days, but do you want

4   to go to the hearing right now?

5              MR. MILES:  A couple things.  Legally, we don't

6   believe that they have a right to a detention hearing, because

7   they have to show a serious flight risk.

8              THE COURT:  Understood.  There's got to be some

9   showing.  But assume I disagree with you, that they've at least

10  proffered enough information to justify a hearing.  So then we

11  can set the date for the hearing on -- a detention hearing.

12  Maybe you're prepared.  Maybe you're ready to answer all these

13  questions and tell me everything about him.  But you also might

14  want to take a day or three days, five days, whatever you think,

15  but I will do it tomorrow if you want to do it tomorrow.

16       But then I have a second question, which is, now they've

17  requested an initial preliminary evaluation regarding

18  competency.  For me, I don't know if I can even address the

19  detention issues until we get that issue resolved, though I

20  would note that in Superior Court, under the rules they use over

21  there, they go forward with the detention hearing.  But it

22  remains somewhat a mystery to me in the law as to whether or not

23  we can move forward to detention if there is some question about

24  your client's competency.

25       So what I have done in the prior month when I had these

1    issues come up and we have this new procedure, which I do know a

2    little -- something about, is first we assess the competency.

3    And it could be that Dr. Grant finds your client to be

4    competent, in which case it ends there, and then we go on to the

5    detention hearing, because now we know that he is competent and

6    we can have the detention hearing.  It may be that she finds he

7    needs further evaluation, and we take the next step under 4241,

8    and he may go to some other medical facility for further

9    evaluation, all pending the government's request that he be

10   detained.

11             MR. MILES:  I will begin with the competency issue.

12   So your Honor, we believe that there's no basis for a screening.

13   The government has -- whether or not my client is mentally ill

14   is one issue, but whether he has -- is suffering from a mental

15   disease or defect that makes him incompetent is a whole

16   different issue.  And the government has not pointed to anything

17   to indicate that he is unable to understand the nature of the

18   proceedings against him, that he's not able to assist in his

19   defense, that he's unaware of the parties in court here, his

20   lawyer, the prosecutor, the judge.

21             THE COURT:  This is where -- but this is why this --

22   at least in my mind, why this very next step suggested by the

23   government exists.  I've got the government coming forward.  I

24   mean, it's with evidence that he is suffering from some

25   delusions.

1          MR. MILES:  According to their facts.

2          THE COURT:  According to their facts, you're right.

3    What am I to make of that?  They've made a proffer, and you are

4    coming here and saying that there's -- I assume you will say

5    that you've spoken to him and you have no problem communicating

6    with him, that you don't believe there's a competency issue.

7    Are you prepared to say that, Mr. Miles?

8          MR. MILES:  Yes, I've spoken with him.

9          THE COURT:  So I've got you saying one thing and the

10   government, not without some evidence, that he's suffering from

11   some delusions.  And the point of this proceeding, of

12   Dr. Grant's initial evaluation, is to provide the Court with

13   information from someone who is knowledgeable in this area and

14   has expertise and is, I think, unbiased.  She's come back and

15   said that some defendants need further evaluation and some do

16   not.  And we take that step so that we don't have to, you know,

17   risk sending him to Butner for 45 days plus two weeks on either

18   end if they're just going to say he's fine.

19        But what am I supposed to do with you saying he's fine and

20   the government having some factual basis here?  It seems to me

21   that we need to do this evaluation.

22         MR. MILES:  I would say that the government does not

23   have enough, your Honor.  They are just pointing to allegations

24   in the case, saying that he said "I'm the president," but not

25   anything relating to whether he is suffering from a mental

1    disease or defect --

2            THE COURT:  It's the fact that he did what he did,

3    thinking that he was the president.

4            MR. MILES:  But that is not enough to suggest that he

5    does not understand the nature of the charges against him.

6            THE COURT:  That he has a rational understanding of

7    what he was doing?  I don't know.  Maybe.  Maybe not.  I hear

8    you.  Not everyone -- many people have mental health challenges.

9    They can even be insane at the time of the crime and still be

10   competent.  I understand that, and I accept your representation.

11   Sometimes you get up and say, We need further evaluation.  But

12   here, I've got a split.  I read it.  I can't say that it's not

13   enough.  I can't.  I'm going to have to have Dr. Grant help me

14   out.

15       So I'm going to order that he be evaluated.  But then it

16   raises the next issue.  Should we do the detention hearing?

17           MR. MILES:  Well, I would --

18           THE COURT:  Because I will schedule one for tomorrow,

19   and I will look at this issue and further decide whether or

20   not -- but what's the point?

21           MR. MILES:  I would submit that if Dr. Grant is going

22   to evaluate him, he need not be in custody while she do so.  I

23   would ask the Court to release my client and order that he

24   report to Superior Court and be interviewed by Dr. Grant.

25           THE COURT:  I will deny that request, because I think

1    the government has made a sufficient showing at this time to

2    justify a detention hearing, and the question is, when should we

3    schedule the hearing?  We can do it tomorrow.  We can do it

4    three days from now, if you want to hold the government to its

5    three days.  We can do it in five days, if you need five days.

6    Or you could say, We need to figure out the competency question

7    first, because I don't want to risk later someone saying that I

8    was -- made a bad decision and went forward with a detention

9    hearing with a client who may have been incompetent at the time;

10   I don't want someone to later challenge that and say I was being

11   ineffective in some way.

12       I don't know.  It's an interesting legal question.  There

13   must be an answer.  I'm happy to do this, too.  I'm happy to put

14   it over for another day, to schedule it for a detention hearing.

15       How much time do you need to get ready?

16           MR. MILES:  Let me get to the point.

17           THE COURT:  Okay.

18           MR. MILES:  I believe the Court is -- I believe I

19   understand the Court's position.  Ideally, I would like for my

20   client to be released today.  If the Court does not envision

21   that as a possibility, that may impact when we would like to

22   have a detention hearing.  But I believe there's no lawful basis

23   to hold my client, based on the fact that he's charged with a

24   misdemeanor, he's been in custody for four nights, and that the

25   government has not shown that there is a serious risk that he

1    will flee.  It's not -- it's about whether he will appear in

2    court.  They have not shown that he's failed to appear in court

3    before or that he has used false names or they have a passport

4    in a false name.

5              THE COURT:  He said he thought he was the president.

6              MR. MILES:  That does not indicate that he will fail

7    to appear in court, your Honor.

8              THE COURT:  It's not the only thing that they have.

9    He has no connections to here, Washington, D.C.  I have no

10   information about other individuals in his life, where he lives,

11   where he's from, how he's ever going to come back.  He's living

12   out of his car.  I think that's enough to get a hearing.

13             MR. MILES:  I spoke with his mother.  Pretrial

14   Services spoke with his mother.  She lives in the Rochester, New

15   York, area.  So she's not local.

16             THE COURT:  Where is she?  Is she here today?

17             MR. MILES:  No, she's not, but she's willing to come.

18             THE COURT:  Maybe you should figure out that and

19   schedule a detention hearing when she comes in and tells me what

20   her plan is.

21             MR. MILES:  Your Honor, let me get to this point.  I

22   believe that he should have been released in Superior Court.

23   And as I just a moment ago read what I understand the

24   government's memorandum of law that was presented before the

25   Superior Court, I have a concern that he may have been held by

1  the Superior Court because they were misinformed by the

2  government as to what the law is.  Their motion says, "Upon

3  motion of the government, the Court shall," "shall," "shall hold

4  a detention hearing in cases that involve a serious risk of

5  flight or where the government seeks a hold for competency

6  evaluation."

7       I don't see anywhere in the United States Code and

8  specifically Title 18 U.S.C. § 4241, which they cite, which says

9  that the Court shall hold somebody where the government seeks a

10  competency evaluation.  So I believe that the Superior Court was

11  in a position where it felt it was legally obligated to hold my

12  client.

13       Secondly, the government also states in its motion

14  that "upon motion of the government, the hearing can be

15  continued for a period of up to three days," and they talk about

16  excluding weekends and whatnot.  And then they state, "During

17  that period, the defendant must remain detained" and cite

18  18 U.S.C. § 3142(f).

19       What I'm concerned is that the Superior Court believed that

20  if the government makes a motion and the government is seeking a

21  competency evaluation, then the Court was required to hold my

22  client.  And I give the Court this information because I am

23  concerned that his continued detention in this case -- I'm

24  concerned about it.  I think it's unlawful.  I believe he should

25  have been released on Saturday.  And to continue to hold him

1   even one more night I find very concerning.

2       If I've said nothing that moves the Court to want to

3   release him today, then I would ask for a detention hearing

4   tomorrow, but I believe he should be released today.

5           THE COURT:  Okay.  And you want to go forward with the

6   detention hearing before we hear from Dr. Grant?

7           MR. MILES:  Yes.

8           THE COURT:  Here's what we are going to do.  I will

9   set this over for detention hearing tomorrow.  So I will deny

10  your request that he be released at this time.  I do believe the

11  government has made a sufficient showing at this point to at

12  least get themselves a hearing.  And what would the third day

13  be?

14          MR. MILES:  Thursday, I think.

15          THE COURT:  So we're well within that.  Government,

16  are you prepared to go forward with a detention hearing

17  tomorrow?

18          MS. MILLER:  Yes, your Honor.

19          THE COURT:  So we will have a detention hearing.  The

20  first issue we are going to deal with is what comes first,

21  competency evaluation or a detention hearing.  So I want case

22  law.  I want to hear argument on that, because that's the first

23  question we've got to determine.  It may be I decide tomorrow

24  that, well, we've got a competency issue, and I think we do, at

25  least one that justifies further evaluation by Dr. Grant, and

1     then we're not going to go forward with the detention hearing

2     until we hear what Dr. Grant has to say.

3          So I think we also need to reach out and schedule now an

4     evaluation, preliminary evaluation with Dr. Grant.  But it may

5     be we can do the detention hearing first.  I will make my

6     decision.  And if I decide to release him, then I will order him

7     to go see Dr. Grant whenever she's available to see him later

8     this week.

9          Yes, counsel for the government?

10              MS. MILLER:  To the extent that if your Honor is

11     anticipating entering an order with respect to Dr. Grant for

12     mental health observation, I have a proposed order that may be

13     helpful in initiating the streamlined process at the U.S.

14     Attorney's Office for handling this.

15              THE COURT:  Okay.

16              MS. MILLER:  I will say, in drafting this, I had

17     expected it to be an unopposed motion by defense counsel.  So I

18     can either revise it and submit something electronically to

19     chambers, or I could provide it -- tender it to the Court.

20              THE COURT:  Can I see what you have?  And if you can

21     provide a copy to Mr. Miles.

22              THE COURTROOM DEPUTY:  Dr. Grant right now is crossing

23     the Bay Bridge.  She does not have her schedule with her.  So

24     she wants me to give her a call tomorrow morning.

25              THE COURT:  Okay.  The order does -- I'm supposed to

1    try to arrange for a date that works for Dr. Grant's schedule.

2    So we can address this further tomorrow first thing.  By then,

3    we will have spoken to Dr. Grant.  We will have a time,

4    hopefully, this week when she can get it done.

5         I only hesitate because I don't want to slow down the new

6    streamlined process.  I know you have to get a contract in place

7    before Dr. Grant does what she wants to do.  I think maybe what

8    I should do is I will say "will be completed by this Friday," so

9    you have an order and you can get the contract going.

10        Mr. Miles, I'm just going to cross through "unopposed."

11   Okay?  Did you read the order?

12                MR. MILES:  I did.

13                THE COURT:  I am just going to go ahead and do this,

14   because this will cause this process to move forward.  They have

15   to get the contract in place before Dr. Grant can do her

16   evaluation.  I'm just putting May 5th on here.  So when

17   Dr. Grant tells us she can do it earlier than that or that date

18   doesn't work for her -- May 5th is a Friday -- we may have to

19   issue an amended order tomorrow.  But let's go ahead and do it

20   that way.  So that way Ms. Miller can get the process begun of

21   getting the contract in place.

22        Any further requests from the government?

23                MS. MILLER:  Just for clarification, your Honor, so

24   you are expecting submissions from the defense and the

25   government on the question of whether the detention hearing can

1    proceed while your Honor has yet to receive the report from

2    Dr. Grant?

3              THE COURT:  While there is a question regarding the

4    defendant's competency, that's the question, what comes first.

5              MS. MILLER:  Yes, your Honor.  And also, the detention

6    hearing has been set for tomorrow?

7              THE COURT:  Tomorrow.  You said you were ready

8    tomorrow.  You have three days.  So you could go longer, but --

9              MS. MILLER:  Tomorrow is fine for the government.

10   Since it's rather unusual to have detention hearings when

11   defendants have been charged by information and are charged with

12   a misdemeanor, just so that I am clear, everyone is expecting an

13   evidentiary hearing where a witness will be proffering, or

14   are -- is it possible that we can proceed by attorney proffer?

15             THE COURT:  I will hear from Mr. Miles, but I don't

16   know why it wouldn't be by -- we don't have an indictment.  I

17   can have one.  What do you want to do?

18             MR. MILES:  The question is whether --

19             THE COURT:  Are you going to waive your client's right

20   to an evidentiary hearing tomorrow, given that he hasn't been

21   indicted and he's not going to be indicted?  It's a misdemeanor.

22   Or can she proceed by proffer?

23             MR. MILES:  When I looked at the rule, I believe we're

24   not entitled to an evidentiary hearing.  I believe she can

25   proceed by proffer.  Information has been filed.  It's a

1    misdemeanor.

2            THE COURT:  All right, then.  So she's going to

3    proceed by proffer tomorrow.

4            THE COURTROOM DEPUTY:  What time is the hearing

5    tomorrow?

6            THE COURT:  1:45.

7            THE COURTROOM DEPUTY:  You don't want me to process

8    this until I hear from Dr. Grant?

9            THE COURT:  We've got to give her a copy right now

10   because she's going to go back to the U.S. Attorney's Office and

11   start making arrangements for the contract.  If the date's going

12   to change, then we will just issue a new order tomorrow.  But

13   she can use this order to move the process forward.  She needs

14   to get a contract signed for Dr. Grant's services before

15   Dr. Grant can do her evaluation.  So that can happen with that

16   order, as I understand it.  So if Dr. Grant comes up with a

17   different date tomorrow, we will talk, and we may issue an

18   amended order.

19           THE COURTROOM DEPUTY:  Okay.  But this has to go to

20   (inaudible) as well.

21           THE COURT:  We might need to change it.  Right now,

22   I've scheduled it for Friday.  If she can't do it on Friday, we

23   will have to cancel this and have an amended order.

24           THE COURTROOM DEPUTY:  Okay.

25           THE COURT:  All right.  Mr. Miles, anything in

1    addition?

2           MR. MILES:  No, your Honor.

3           THE COURT:  The government?

4           MS. MILLER:  No, your Honor.

5           THE COURT:  I will see everyone back here at 1:45

6    tomorrow.  The parties are excused.

7        (Proceedings adjourned.)

8

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

10

11           CERTIFICATE OF TRANSCRIBING COURT REPORTER

12

13        I, Sara A. Wick, certify that the foregoing is a true

14   and correct transcript, to the best of my ability, from the

15   audio-recorded proceedings in this matter and that said

16   transcript has been compared with the audio recording.

17

18   /s/ Sara A. Wick                    June 8, 2018

19   SIGNATURE OF COURT REPORTER         DATE

20

21

22

23

24

25